**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

| | | |
|---|---|---|
| RESTORE OF THE HEARTLAND, INC., | ) | |
| a Kansas corporation, JOSEPH MCGRAW, | ) | |
| DARLENE MCGRAW, JAMES AYLWARD, | ) | |
| GWEN AYLWARD, JG AYLWARD, INC., a Kansas | ) | |
| corporation | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | Case No. 05-4079-RDR |
| | ) | |
| JOSHUA FINANCIAL SERVICES, INC., a Texas | ) | **JURY TRIAL REQUESTED** |
| corporation, ARCHER D. BONNEMA, | ) | |
| JACOB D. BONNEMA, DOUGLAS J. DEAVERS, | ) | |
| BENEFITS FOR CORPORATE AMERICA, INC., | ) | |
| AMERICAN BENEFITS TRUST, INC. a Florida | ) | |
| corporation, SECURITY MUTUAL  LIFE INSURANCE | ) | |
| COMPANY OF NEW YORK, INC., a New York | ) | |
| corporation, GUARDIAN LIFE INSURANCE | ) | |
| COMPANY OF AMERICA, INC. a New York corporation | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiffs, by and though counsel John C. Frieden and Clinton E. Patty of Frieden Haynes & Forbes, hereby bring the following causes of action against the above named Defendants as follows:

**PARTIES**

1.     Plaintiffs Joseph McGraw and Darlene McGraw, husband and wife, are individuals residing in Manhattan, Kansas.   Joseph and Darlene McGraw are owners of Plaintiff, Restore of the Heartland, Inc. ("ROH"), a Kansas corporation with its principal place of business in Manhattan, Kansas.

2.      Plaintiffs James Aylward and Gwen Aylward, husband and wife, are individuals residing in Manhattan Kansas.  James and Gwen Aylward are the owners of Plaintiff JG Aylward, Inc., a Kansas corporation with its principal place of business in Manhattan, Kansas.

3.      Defendant American Benefits Trust, Inc. ("ABT" or the "Trust"), is a Florida corporation with its principal place of business in Bonita Springs, Florida. ABT is a Multiple Employer Welfare Benefit Trust created pursuant to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") and of Section 419A of the Internal Revenue Code (the "Code"), 26 U.S.C. § 4l9A.   Defendant Douglas Deavers ("Deavers") is a resident of Naples, Florida and has been employed as President of ABT during all times pertinent herein.   Defendant Benefits for Corporate America, Inc. ("BCA") is a Florida corporation with its principal place of business in Bonita Springs, Florida. ABT, Deavers and BCA. are collectively referred to herein as the "Deaver Defendants."

4.      Defendants Archer D. Bonnema and Jacob D. Bonnema (the "Bonnemas" or "Bonnema Defendants") are individuals who reside in Plano, Texas and whose actions in the State of Kansas gave rise to the claims alleged in this Amended Complaint.  The Bonnemas own and do business through Jacob Financial Services, Inc. ("Joshua Financial"), a Texas corporation with its principal place of business in Dallas, Texas.   The Bonnemas are also licensed insurance agents for Defendants Security Mutual Life Insurance Company of New York, Inc., and Guardian Life Insurance Company of America, Inc

5.      Defendant Security Mutual Life Insurance Company of New York, Inc. ("Security Mutual"), is a New York corporation with its principal place of business at 100 Court Street, Binghamton, New York.

6.      Guardian Life Insurance Company of America, Inc. ("Guardian Life"), is a New York Corporation, with its principal place of business at 7 Hanover Square, New York, New York.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between all Plaintiffs and all Defendants, and the claims asserted by each Plaintiff herein involve an amount in controversy in excess of $75,000.00, exclusive of interest and costs.  Because the acts, omissions, transactions and/or occurrences alleged as the basis for recovery in this Amended Complaint were committed by, on behalf of or through the concerted action of Defendants within the State of Kansas, venue properly lies in this District.

## FACTUAL BACKGROUND REGARDING THE MCGRAW PLAINTIFFS

8.      The allegations set forth in Paragraphs 1 through 7 of this Amended Complaint are hereby reasserted and fully incorporated by reference.

9.      Joseph and Darlene McGraw were first approached by Archer D. Bonnema ("Bonnema") in the Fall of 2001 with a business investment proposal that promised huge tax savings and long-term retirement benefits to small and medium sized businesses under a Multiple Employer Benefit Plan known as the American Benefits Trust ("ABT").  Bonnema represented that the ABT provided several benefits, including: fully deductible contribution amounts; flexibility in contributions; tax-free death benefits to beneficiaries; freedom to withdraw funds without liability for taxes or penalties; and protection of the investment from creditors.  Bonnema represented that one of the primary benefits of the ABT was that the Trust only required two consecutive years of contributions.  Regarding their initial contributions, Bonnema further represented the following: (1) the initial contributions would always remain in

the ABT; (2) they could be withdrawn by the McGraws in the future without any liability for taxes or penalties; and (3) they were fully tax deductible as a business expense.  Bonnema further represented that Trust assets would be secured by life insurance policies purchased by ABT on behalf of the McGraws.  Bonnema represented that after the second year contribution, the McGraws could elect to reduce or discontinue future contributions to the ABT without any adverse effects on their initial contributions, or any reduction in value of their interest in Trust assets, other than a possible reduction in death benefits.

10.     As a further inducement to participate in ABT, Archer Bonnema advised the McGraws that ABT had employed a New York law firm that would handle any potential disputes with the Internal Revenue Service, and that this firm regularly provided advice and guidance to the Internal Revenue Service on matters relating to Multiple Employer Welfare Benefit Trusts.  Bonnema urged the McGraws to cause ROH to participate in the Trust on behalf of the McGraws as employees, and induced Darlene McGraw to assist him in soliciting friends and business associates of the McGraws in the Riley County, Kansas area.

11.     The representations made to the McGraws by Bonnema regarding promised ABT benefits, including flexibility in contribution amounts to the Trust, were consistently repeated in the presence of the McGraws' accountants, prospective clients and financial consultants.

12.     On December 1, 2001, as a result of Bonnema's representations and inducements regarding the ABT, the McGraws executed an ABT Employer's Adoption Agreement ("ABT Plan") on behalf of ROH. The ABT Plan for ROH was administered by Defendants Deavers and BCA. On January 3, 2002, ROH made the initial first year contribution to the ABT for employee Joseph D. McGraw in the amount of $50,995.00.  On June 13, 2002, ROH also made

a payment to the ABT on behalf of employee Darlene McGraw in the amount of $2,996.00. Although Archer Bonnema solicited the McGraws to select life insurance from Security Mutual as security for their investments in the Trust, Bonnema was not registered by Security Mutual to solicit applications, or otherwise sell life insurance to Kansas residents until May 10, 2003. However, pursuant to Bonnema's unauthorized solicitation (which subjects him to sanctions under the provisions of K.S.A. 40-4912) ABT purchased life insurance policies on the lives of Joseph and Darlene McGraw from Security Mutual.  Security Mutual issued these policies on June 13 and 26, 2002, respectively.

13.     Archer Bonnema instructed the McGraws that if they had any questions relating to the Trust, they should contact the Bonnemas.  Bonnema told the McGraws they should never contact the Plan Administrator, Trustee or Insurance Carrier as they would not be able to answer any questions.

14.     Following their initial contributions to ABT, the McGraws requested documentation and an accounting from the Bonnemas concerning the Trust assets. Despite multiple requests, neither ROH nor the McGraws were provided any ABT documents until nearly a year after the initial contributions were made, and they have never been provided with any accountings regarding their investment in Trust Assets.

15.     On January 22, 2003, ROH made its second annual contribution to the Trust on behalf of Joseph and Darlene McGraw in the amount of $53,516.00.  In early 2003, the Bonnemas advised the McGraws that the United States Department of Treasury was contemplating changes in regulations regarding Multiple Employer Welfare Benefit Trusts.  On July 1, 2003, the Department of Treasury issued new and revised regulations regarding Multiple Employer Welfare Plans.  On or about July 14, 2003, Archer Bonnema advised the

McGraws that the primary changes involved the discriminatory treatment of employees in a Multiple Employer Welfare Benefit Plan.

16.     In September 2003, the McGraws contacted Archer Bonnema regarding their contributions and once again requested an accounting of the ROH contributions. On or about September 22, 2003, Bonnema advised the McGraws that the identical benefits of the ABT were now being offered by the Millennium Multiple Employer Welfare Benefit Plan (the "Millennium Trust").

17.     On September 25, 2003, following multiple unsatisfied requests for documents and information regarding the ABT and ROH's contributions to Defendant Deavers, BCA and ABT, the McGraws obtained limited information from ABT relating only to premium payments that had been made to Security Mutual.  However, the McGraws were still not provided any Trust accounting from the Bonnemas, Deavers, BCA or ABT.

18.     On or about October 15, 2003, Defendant Deavers informed the McGraws that the United States Department of Treasury had issued new regulations and, as a result, ROH's contributions to ABT were no longer tax deductible and that participants should transfer to another Multiple Employers Welfare Benefit Plan that would not be affected by the new regulations.

19.     In reasonable reliance on the representations and assurances made by the Bonnemas and Deavers above, on December 17, 2003, ROH executed an Adoption Agreement transferring its Employer Welfare Benefit Plan from ABT to the Millennium Trust.

20.     In reasonable reliance on representations and assurances by the Bonnemas that there would not be any adverse financial effects or consequences from electing to discontinue contributions to the Trust after the second year of participation, ROH decided to forego making

any contributions to the Trust on behalf of the McGraws for the year 2004.

21.     However, on or about April 1, 2004, ABT sent ROH a premium notice in the amount of $49,999.98.  This premium notice surprised the McGraws since they had been led to believe that they had no obligation to make any contributions or premium payments for the year 2004, and that their investment in ABT had been transferred from the ABT to Millennium Trust.  The McGraws later learned that the Trust transfer did not occur until September of 2004.  Based upon repeated representations and assurances from the Bonnemas that there was no need to make any contribution to the Trust after the second year, neither ROH nor the McGraws made any contribution or premium payment to either ABT or Millennium for the year 2004.

22.     In January 2005, the Plan Administrator of the Millennium Trust advised the McGraws that ROH's Trust assets had been applied to the 2004 Security Mutual premium payment, and that ROH's entire two years of contributions had dissipated.  ROH and the McGraws were also informed that their two insurance policies had lapsed and that the Trust would be terminated for failure to make annual premium payments.  Despite the exercise of reasonable diligence, the McGraws and ROH were unaware and unable to discover that the life insurance policies were not obtained for the limited purpose of securing Trust assets.  Instead, the McGraws later discovered that the life insurance policies were actually the sole and exclusive property of the Trust, and any election to reduce or refrain from making any contributions to the Trust after the second year of participation would have significant, adverse financial consequences, including the lapse and cancellation of insurance policies for nonpayment and loss of their investment in the Trust.

23.    As a proximate result of the foregoing wrongful acts, omissions, transactions, occurrences and/or course of conduct by, on behalf of and/or attributable to one or more of the named Defendants discussed in this section, ROH has lost its entire investment in the Trust in an amount exceeding $100,000.00, exclusive of interest and costs.

**FACTUAL BACKGROUND CONCERNING THE AYLWARD PLAINTIFFS**

24.    The allegations set forth in Paragraphs 1 through 23 of this Amended Complaint are hereby reasserted and fully incorporated by reference.

25.    On or about May of 2002, James and Gwen Aylward (the "Aylwards") met with Defendant Archer Bonnema at the home of the McGraws in Manhattan, Kansas. Archer Bonnema made the same presentation regarding the ABT program that was previously explained to the McGraws. Bonnema emphasized to the Aylwards that contributions to the Trust would be required only for a period of two years, and at the end of two years contributions, if any, were discretionary.

26.    Based on the representations of Defendant Archer Bonnema, the Aylwards formed JG Aylward, Inc. to become a plan employer participant in the ABT.  The insurance company selected to provide insurance was Guardian Life.

27.    The Aylwards determined that the first year annual contribution by AG Aylward, Inc. would be $25,000.00 for Gwen Aylward and $25,000.00 for James Aylward. Payments were made in quarterly installments to ABT.

28.    Shortly after the July 2003 Treasury regulations were issued, Archer Bonnema urged the Aylwards to transfer JG Aylwards Trust assets from the ABT Trust to a Trust known as the Sterling Trust because it was a "better choice" for JG Aylward, Inc.

29.    In August 2003, the Aylwards asked the Bonnemas if JG Aylward, Inc. could reduce its contribution to the Trust to $30,000.00 per annum instead of the previous year's contribution of $50,000.00. The Bonnemas assured the Aylwards that the contribution could be reduced since they were changing Trusts. However, the Aylwards were advised by the Bonnemas to continue making contributions to ABT, notwithstanding the decision to transfer to the Sterling Trust. On August 27, 2003, JG Aylward, Inc. made its second contribution payable to the ABT trust in the amount of $30,000.00.

30.    On September 22, 2003, the Bonnemas traveled to Manhattan, Kansas and provided the Sterling Trust transfer documents to the Aylwards for their signatures. The Aylwards again asked the Bonnemas whether there would be any adverse consequences if they did not contribute to the Trust in a third or subsequent year. The Bonnemas responded that the Trust's flexibility permitted participants to discontinue contributions after the second year of participation without adverse consequences. Prior to leaving for Texas, Archer Bonnema advised Gwen Aylward that the "old" ABT Trust was "back" in the name of Millennium Multiple Employer Welfare Benefit Plan. When the Aylwards expressed surprise that JG Aylwards Trust assets had been transferred to the Sterling Trust, Mr. Bonnema advised them that they would subsequently be transferred from the Sterling Trust to the Millennium Trust, which he represented was identical to the ABT.

31.    Following the September 2003 meeting with the Bonnemas, the Aylwards repeatedly attempted to obtain the executed Sterling Trust documents from the Bonnemas without success.

32.    On August 23, 2004, Jacob Bonnema forwarded to the Aylwards a copy of a premium notice for $50,000.00.  Much to the surprise of the Aylwards, Jacob Bonnema advised

Gwen Aylward that JG Aylward, Inc. should make a $50,000.00 contribution to the Trust. He also indicated that there was a $20,000.00 second year deficiency since only $30,000.00 had been contributed to the Trust.  Jacob Bonnema's explanation was difficult to understand in light of the fact the Aylwards had been assured by the Bonnemas that the second year contribution could be reduced to $30,000.00 since they had changed Trusts.

33.     Finally, at the suggestion of Defendant Jacob Bonnema and, in an effort to avoid cancellation and the loss of all of JG Aylward's contributions, on September 30, 2004, JG Aylward Inc. forwarded $20,000.00 to the Trust administrator.

34.     In October 2004, Gwen Aylward finally received insurance illustrations reflecting that the Trust had purchased life insurance policies based on a $30,000.00 yearly contribution in accord with the direction made by the Aylwards.

35.     Concerned with the conflicting information concerning Trust contributions, Gwen Aylward decided to contact the Sterling Trust Plan Administrator directly, contrary to the instructions of the Bonnemas that contact with Plan Administrators should only be made through the Bonnemas,  to ascertain the status of the Trust assets and insurance policies. The Sterling Trust Plan Administrator advised her that Sterling Trust had not received any policy information from the ABT, but did have a letter from Guardian Life which indicated that the Aylwards had requested paid up policies and withdrawals.  Repeated attempts to ascertain the status of the policies and the Trust were unavailing.  However, the Aylwards were advised by Sterling Trust that Guardian Life had issued two $600.00 checks made payable to the Aylwards to the ABT.

36.     Finally, in February 2005, Sterling Trust advised the Aylwards that it was not in compliance with the new rules and regulations issued by the Department of Treasury and

suggested that they consider another Welfare Benefit Trust. Gwen Aylward contacted Jacob Bonnema who advised that the Bonnemas could no longer assist in determining what course of action to take. Gwen Aylward then contacted Guardian Life to ascertain the status of the policies and was advised that ABT was still listed as the Trust Administrator and that the Trust had never been transferred to Sterling Trust.

37.    On March 15, 2005, the Sterling Trust Plan Administrator informed the Aylwards that Gwen Aylward's policy of insurance had a loan on the policy with cash value of $14,450.00 and a paid up addition on her policy of $3,851.55.  Completely surprised at this information, Gwen Aylward contacted Guardian Life. She was advised that James Aylward's policy had been converted to a term policy and that the cash value was gone. Guardian Life further advised Gwen that her policy had cash value in the amount of $31,791.80, and was subject to a loan of $5,700.00.   The Trustee was listed as Jim and Gwen Aylward, 5052 Tamiami Trail, Naples, Florida. Guardian Life had no explanation why the Trust had never reduced the premium payment to $30,000.00 per annum or why the policy covering the life of James Aylward was converted to a term policy.

38.    On March 16, 2005, Gwen Aylward contacted Defendant Douglas Deavers and made inquiry about the information she had received concerning the Trust, and asked about the two $600.00 checks which had been sent to the Aylwards at his Naples, Florida address. Defendant Deavers advised Plaintiff Aylward that he had forged the Aylwards names on the checks to pay for past due administrative fees and that JG Aylwards trust assets had never been transferred to Sterling Trust.

39.    The Aylwards are presently uncertain regarding the status of the Trust or the Trust assets and have been unable to obtain accountings despite repeated requests. As a result

of the above described wrongful conduct, it appears that JG Aylward, Inc. lost its entire contributions in the amount of $101,082.20.

## FIRST CLAIM FOR RELIEF

**(Fraud, Misrepresentation and Conspiracy)**
**(All Defendants)**

40.     The allegations set forth in Paragraphs 1 through 39 of this Complaint are hereby reasserted and fully incorporated by reference.

41.     Defendants Archer D. Bonnema, Jacob Bonnema and Joshua Financial Services, Inc. (the "Bonnema Defendants") engaged in fraudulent conduct and misrepresented material facts to Plaintiffs Joseph McGraw, Darlene McGraw and Restore of the Heartland, Inc., including but not limited to the following:  (a) that the American Benefit Trust plan only required two (2) consecutive years of contributions, and that subsequent contributions need not be made or could be reduced without adverse financial consequences; (b) that the contributions could be withdrawn tax-free; (c) that the life insurance policies were for the sole purpose of securing their investment in the Trust; (d) that ROH and the McGraws would continue to enjoy the benefits of the ABT Plan, as falsely described and misrepresented by the Bonnema Defendants, following the transfer of Trust assets to the Millennium Trust; (e) that complete accountings of Trust assets would be provided to Trust participants; and (f) that the Defendants permitted loans to be made against Trust assets to make premium payments without the knowledge or consent of ROH or the McGraws.

42.     Defendants Archer D. Bonnema, Jacob Bonnema and Joshua Financial Services, Inc (the "Bonnema Defendants") engaged in fraudulent conduct and misrepresented material facts to Plaintiffs James Aylward, Gwen Aylward and JG Aylward, Inc., including but not

limited to the following: (1) that the American Benefit Trust plan only required two (2) consecutive years of contributions, and that subsequent contributions need not be made or could be reduced without adverse monetary consequences; (2) that the second year contribution could be reduced because JG Aylward, Inc. was changing trusts from ABT to Sterling Trust without adverse monetary consequences; (3) that JG Aylward could reduce or forgo contributions subsequent to the second year contribution without adverse monetary consequences; (4) that the contributions could be withdrawn tax-free; (5) that life insurance was only necessary for the purpose of serving as security for the investment in the Trust; (6) that the Sterling Trust was a better "choice" for the Aylwards when the Trust was not in compliance with United States Treasury rules and regulations; (7) that the benefits of a Multiple Employer Benefit Plan, would continue to be available if the Trust assets were transferred to the Sterling Trust; (8) that complete and timely accountings of Trust assets would be provided to Trust participants; (9) that the Trust assets had in fact been transferred to the Sterling Trust; (10) that the Aylwards could reduce the second year contribution to $30,000.00 without adverse monetary consequences; (11) that a payment of $20,000.00 would assure the Trust would continue without adverse monetary consequences; (12) that Defendants fraudulently caused James Aylward's policy to be converted to a term policy without the knowledge or consent of the Aylwards or JG Aylward, Inc.; and, (13) caused loans to be made against Trust assets to make premium payments without the knowledge or consent of JG Aylward, Inc. or the Aylwards.

43.    The misrepresentations made by the Bonnema defendants were false, known to be false and were made for the purpose of enriching the Bonnemas through payment of commissions by Security Mutual and Guardian Life, and fees to the Deaver Defendants.

44.     Upon information and belief, Plaintiffs allege that the Bonnema Defendants and Deaver Defendants conspired to prevent Plaintiffs from discovering the fraud and misrepresentations, including advising the McGraws and Aylwards to not seek information from the Plan Trustee, Plan Administrator or Insurance Companies, and by not providing an accounting of Trust Assets.

45.     Plaintiffs reasonably relied on the above fraudulent and misleading misrepresentations.

46.     Upon information and belief, Defendants acted in a concerted and intentional effort to further the fraudulent misrepresentations regarding the Multiple Employer Welfare Benefits Trusts.

47.     As a result of the Defendants willful and malicious misrepresentations and wrongful conduct, Plaintiffs have been and will be deprived of the value of approximately $200,000.00 plus administrative fees and costs associated with their participation in the Trusts.

48.     Because Plaintiffs were fraudulently induced into participating in the welfare benefit plans, Plaintiffs are entitled to equitable rescission of the plans, including the return of approximately $200,000.00 to Plaintiffs. In the alternative, Plaintiffs are entitled to economic damages totaling approximately $200,000.00, plus associated expenses.

49.     On February 26, 2002, Security Mutual appointed Jacob D. Bonnema to market insurance on its behalf in the State of Kansas and on May 10, 2003, Security Mutual appointed Archer D. Bonnema to market insurance in the State of Kansas on its behalf in the State of Kansas. As a result of the appointments, Archer D. Bonnema and Jacob D. Bonnema were fully authorized as non-resident insurance agents to solicit from Kansas residents the sale of various insurance products on behalf of Security Mutual. Pursuant to this authority, Archer D.

Bonnema solicited the McGraws and ROH to participate in a welfare benefit plan designed to purchase insurance on behalf of the participants' employees.  During the course of this representation, the Bonnemas engaged in acts of misconduct and misrepresentation in an effort to market insurance products on behalf of Security Mutual and within their scope of authority. As a result, Security Mutual is legally responsible for the acts of its agent under the doctrine of *respondeat superior* for all damages sustained as a result of its agent's misconduct.

50.   On or about September 11, 2002, Guardian Life Insurance appointed Jacob D. Bonnema to market insurance on its behalf in the State of Kansas and on September 19, 2002, Guardian Life Insurance appointed Archer D. Bonnema to market insurance on its behalf in the State of Kansas. As a result of the appointments, Archer D. Bonnema and Jacob D. Bonnema were fully authorized as out-of-state insurance agents to solicit from Kansas residents the sale of various insurance products on behalf of Guardian Life Insurance.  Pursuant to this authority, Archer D. Bonnema solicited the JG Aylward and the Aylwards to participate in a Multiple Welfare Benefit Plan which was designed to purchase insurance on behalf of the participants' employees.  During the course of this representation on behalf of Guardian Life Insurance, the Bonnemas engaged in acts of misconduct and misrepresentation in an effort to market insurance products on behalf of Guardian Life Insurance and within their scope of authority. As a result, Guardian Life Insurance is legally responsible for the acts of its agent under the doctrine of *respondeat superior* for all damages sustained as a result of its agent's misconduct.

### SECOND CLAIM FOR RELIEF
### Negligence
### (All Defendants)

51.     The allegations set forth in paragraphs 1 through 50 of this Amended Complaint Are hereby reasserted and fully incorporate by reference.

52.     Plaintiffs allege that the Bonnema Defendants had a duty to act with reasonable and due care in soliciting Plaintiffs to participate in the Employer Welfare Benefit Plans. Plaintiffs allege the Defendants had a responsibility and duty to faithfully, truthfully and with due care accurately and fully explain and describe to Plaintiffs the nature and operation of Employer Welfare Benefit Plans, including all material facts, to enable Plaintiffs to make an informed judgment whether such plans met their investment desires and needs.

53.     Plaintiffs allege that the Deaver Defendants breached their duty to act with reasonable and due care in responding to communications concerning the status of Plaintiffs respective Trust accounts, and failing to provide timely accountings to enable Plaintiffs to ascertain and understand the status of the Trust accounts.

54.     The Defendants failed and refused to comply with their duty of care and negligently and/or intentionally breached their responsibilities.  Plaintiffs allege the Defendants acted in reckless and wanton disregard of their duties and responsibilities.

55.     Plaintiffs had a right to rely upon the Defendants complying with their respective duty of care, and did rely upon the representations of the Defendants.  As a result, the Defendants suffered damages as described in this Amended Complaint.

56.     Defendants Security Mutual and Guardian Life are responsible for the acts of their agents under the doctrine of respondeat superior, and for all damages sustained by Plaintiffs as a result of the misconduct alleged herein.

### THIRD CLAIM FOR RELIEF
#### (Breach of Contract)
#### (All Defendants)

57.     The allegations set forth in Paragraphs 1 through 56 of this Complaint are hereby

reasserted and fully incorporated by reference.

58.     The defendants Jacob D. Bonnema and Archer D. Bonnema made

representations to the Plaintiffs, and based on these representations Plaintiffs entered into

Agreements to participate in the Multiple Employer Welfare Benefit Trusts.

59.     The Bonnema Defendants, acting as agents for Security Mutual and Guardian

Life, have failed and refused to comply with the terms of the Agreements and are in breach of

the terms of the Agreements.  Notwithstanding, Plaintiffs have complied with each and every

provision of the Agreements.  Defendants Archer and Jacob Bonnema, Joshua Financial

Services, Inc., Security Mutual and Guardian Life Insurance remain in breach of the terms of

the Agreements.  Plaintiffs have suffered substantial damages as a result of the above

misconduct and breach of the respective agreements.

60.     Security Mutual and Guardian Life are fully responsible as principal for the

wrongful acts of their agents, Archer D. Bonnema and Jacob D. Bonnema, and are therefore

responsible for all damages sustained by the Plaintiffs.

61.     The Deavers Defendants completely failed to abide by these Agreements despite

frequent requests made by all of the Plaintiffs for accountings.  The failure to provide the

accountings assured the Plaintiffs would be unaware of the fact that the sums paid into the

Trust were being dissipated contrary to the Trust Agreement and Agreement of the parties.

62.     As a result of the breaches of contract alleged above, the Plaintiffs have

collectively sustained damages in excess of $200,000.00.

**FOURTH CLAIM FOR RELIEF**
**(Constructive Trust)**
**(All Defendants)**

63.     The allegations set forth in Paragraphs 1 through 62 of this Amended Complaint are hereby reasserted and fully incorporated by reference.

64.     Plaintiffs are entitled to distribution of funds wrongfully held by one or more of the Defendants in an amount currently estimated at $200,000.00.

65.     Plaintiffs have no adequate remedy at law to compensate them for their losses and will never realize the benefit of the bargained-for investment, the precise extent value of which necessarily depends on future events that are not yet ascertainable.

66.     Plaintiffs are entitled to money in the possession of one or more Defendants and as belonging to Plaintiffs where that money is clearly traceable to particular funds or property in one or more of the Defendants' possession, which funds arose from Plaintiffs' payments.

67.     Plaintiffs are therefore entitled to an order barring Defendants from disbursing the disputed funds and requiring Defendants to hold those funds in trust for Plaintiffs' benefit.

**ALTERNATIVE FIRST CLAIM FOR RELIEF - ERISA**
**(Rescission)**

68.     The allegations set forth in Paragraphs 1 through 67 of this Amended Complaint are hereby reasserted and fully incorporated by reference.

69.     Rescission of an ERISA plan, the formation of which was induced by fraud, is "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B).

70.     The Bonnemas, on behalf of themselves, Jacob Financial, ABT, Security Mutual and Guardian Life, made the above misrepresentations ("the Misrepresentations") when in fact

the statements were false as applied to the Plaintiffs' welfare benefit plans. Upon information and belief, these misrepresentations were made with the full knowledge of Defendants Deavers, ABT, Security Mutual and Guardian Life. Further, upon information and belief, Defendants Deavers and the Bonnemas willfully prevented Plaintiffs from securing accountings of their contributions until their contributions were totally liquidated to prevent Plaintiffs from discovering the various misrepresentations and fraud.

71.     Plaintiffs reasonably relied on these fraudulent misrepresentations and had the right so to rely on the Bonnemas representations.

72.     As a result of the Bonnemas misrepresentations, made on behalf of themselves, Jacob Financial, ABT, the Deaver Defendants, Security Mutual and Guardian Life, Plaintiffs have been and will be deprived of the value of the approximately $200,000 in contributions to the Trusts. Those consequential and proximate damages would have been avoided if the misrepresentations had not been made.

73.     Plaintiffs have no adequate remedy at law to compensate them for their losses, and will never realize the benefit of the bargained-for investment.

74.     Because Plaintiffs were fraudulently induced into creating their welfare benefit plans, Plaintiffs are entitled to equitable rescission of their plans under 29 U.S.C. § 1132(a)(3), including the return of  a sum in excess of  $200,000.00 to Plaintiffs.

## ALTERNATIVE SECOND CLAIM FOR RELIEF
### (ERISA - Constructive Trust)

75.     The allegations set forth in Paragraphs 1 through 74 of this Amended Complaint are hereby reasserted and fully incorporated by reference.

76.     Recovery of monies pursuant to a constructive trust is "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B).

77.     Plaintiffs are entitled to distributions of funds wrongfully held by one or more of the Defendants in an amount currently estimated at approximately $200,000.00.

78.     Plaintiffs have no adequate remedy at law to compensate them for their losses, and will never realize the benefit of their bargained-for investment.

79.     Plaintiffs are entitled to money in the possession of one or more Defendants and as belonging to Plaintiffs where that money is clearly traceable to particular funds or property in one or more of the Defendants' possession, which funds arose forms Plaintiffs' payments.

80.     Plaintiffs are therefore entitled to an order barring Defendants disbursing the disputed funds and requiring the Defendants to hold those funds in trust for the Plaintiffs' benefit.

## ALTERNATIVE THIRD CLAIM FOR RELIEF
### (ERISA - Attorneys Fees)

81.     The allegations set forth in Paragraphs 1 through 80 of this Amended Complaint are hereby reasserted and fully incorporated by reference.

82.     Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court award the following to the Plaintiffs:

A.     Plaintiffs seek recovery from the Defendants recovery of all damages sustained as a result of Defendants misconduct in any amount in excess of $200,000.00 plus interest, attorney fees and such other and further relief as the Court deems just and equitable.

B.     On Plaintiffs' First and/or Alternative First Claims for Relief, Plaintiffs seek an order of rescission of the Plaintiffs' welfare benefit plans, including the return of approximately $200,000 for the premiums and fees paid by Plaintiffs for the life insurance policies issued by Guardian Life and Security Mutual, plus statutory prejudgment interest, or such other amount as may be proven at trial;

C.     On Plaintiffs' Second and/or Alternative Second Claims for Relief enjoin Defendants from disbursing the disputed funds pending further orders of this court, and order Defendants to hold $200,000.00 in trust for Plaintiffs, and to pay such funds over to Plaintiffs, plus statutory prejudgment interest, or such other amounts as may be proven at trial;

D.     Award Plaintiffs their taxable costs, expenses and reasonable attorneys' fees; and

E.     Award Plaintiffs such other relief as may be just and equitable in the circumstances.

Respectfully submitted,


s/ John C. Frieden
John C. Frieden,         #06592
frieden@fhflawfirm.com
Clinton E. Patty,        #18912
patty@fhflawfirm.com
Frieden, Haynes & Forbes
555 S Kansas Ave, Ste 303
P. O. Box 639
Topeka KS 66601-0639
TEL:  (785) 232-7266
FAX:  (785) 232-5841
ATTORNEYS FOR PLAINTIFFS